FILED

2008 Jun-17  PM 01:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| VERDELL RICKS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 2:07-CV-0867-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I.     Introduction.

Plaintiff, Verdell L. Ricks, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Ricks has timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was thirty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a tenth grade education, as well

as nursing assistant training.  (Tr. at 149-50.)  Her past work experience includes employment as a nursing assistant, manual laborer, and cook.  *Id.* at 150-51.  Plaintiff claims that she became disabled on June 1, 2003, due to chronic headaches; back, neck and left side pain; chest pain; and problems with her legs becoming numb and giving way.  *Id.* at 45, 152-54.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. § 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id.*  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. § 416.920(a)(4)(iii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id.*  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. § 416.920(a)(4)(ii).  Otherwise, the analysis

continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. § 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. § 416.920(a)(4)(iv).   If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.   20 C.F.R. § 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 20.)  However, the ALJ found that despite Plaintiff's allegations of chest pain, headaches, hypertension, and back, neck, and leg pain, Plaintiff "does not have any impairment or impairments which significantly limit her ability to perform basic work related functions" and therefore does not have any severe impairments.  *Id.*   The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability' as defined in the Social Security Act at anytime through the date of this decision."  *Id.* at 21.

II.    Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but

applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400.

No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion.

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence and that improper legal standards were applied.   Accordingly, Plaintiff asserts that the ALJ's decision should be reversed for two reasons. (Doc. 7 at 4.)  First, Plaintiff contends that the ALJ improperly discounted her consultative examiner's ("CE") opinion.  *Id.* at 8.  Second, Plaintiff argues that the ALJ's finding that she suffered no severe impairments is not supported by the evidence.  *Id.*

A.    Opinion of Consultative Examiner.

Plaintiff contends that the ALJ improperly discounted the opinion of her consultative examiner, Dr. Zarimba, when he found it to be based on exaggerated complaints by Plaintiff without providing findings as to Plaintiff's credibility.  *Id.*  Plaintiff specifically argues that the ALJ cited no basis for his conclusion that Plaintiff's complaints were exaggerated.  *Id.*

The following factors are considered in deciding the weight to be given to any medical opinion: examining relationship, treatment relationship, supportability, consistency, specialization, and any other factors which tend to support or contradict the opinion.  *See* 20 C.F.R. § 416.927(d).  The

weight afforded a physician's opinion depends upon the extent by which it is supported by clinical or laboratory findings and is consistent with other evidence in the record. *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). Medical source opinions not supported by clinical evidence are not entitled to deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). The ALJ may properly reject the opinion of any medical source when the evidence of record supports a contrary conclusion. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citations omitted).

In deciding that the CE's opinion was entitled to little weight, the ALJ explained that the CE's opinion regarding Plaintiff's residual functional capacity and his clinical assessments of pain were inconsistent with the evidence of record. (Tr. at 20.) The ALJ also noted that the CE's examination was an independent medical exam at the request of Plaintiff's attorney. *Id.* at 19.

In supporting these conclusions, the ALJ distinguished the CE's opinion regarding Plaintiff's residual functional capacity from the rest of the evidence of record. The ALJ noted that the CE determined that Plaintiff had significant limitations on her ability to perform work-related activities.

*Id*.  This determination was largely based on Plaintiff's allegations of

impairment.  *Id*.  The ALJ described Plaintiff's reports to the CE as follows:

> The claimant reported severe migraine headaches and that her
> pain on a pain scale of one to ten . . . was eight and one-half.
> The claimant also reported severe left sided pain, dysfunction,
> and weakness with difficulty standing and walking. . . .  [T]he
> claimant used a cut off mop handle as a makeshift cane.  The
> claimant stated she needed a more stable assistive device as she
> was unstable and sometimes fell because of left side and leg
> weakness.

*Id*.  The ALJ specifically listed the symptoms described in the CE's opinion

as follows: shortness of breath with minimal exertion at home, sharp

stabbing chest pain at rest with exertion, orthopnea, and difficulty sleeping.

*Id*.

In rejecting these findings, the ALJ highlighted the lack of evidence

that Plaintiff had ever been diagnosed with or prescribed medication for

migraines; that she had ever complained of pain that radiated down her left

side (except for left-sided chest wall pain); that she had ever reported falls

due to left-sided pain and weakness; or that any treating physician had ever

noted that Plaintiff required use of an assistive device to ambulate.  *Id*.  The

ALJ further noted that only a few weeks earlier Plaintiff had been admitted

to the emergency room at Cooper Green Mercy Hospital, at which time no musculoskeletal or neurological deficits were noted except for headache. *Id.* The ALJ also explained that the evidence shows that Plaintiff had not routinely complained of shortness of breath, orthopnea, or difficulty with sleeping. *Id.*

Second, the ALJ distinguished the CE's clinical assessments of pain from the rest of the evidence of record. Although the CE opined that Plaintiff's pain was virtually incapacitating, the ALJ pointed out the absence of such complaints in the rest of the evidence. *Id.* at 20. Despite the CE's expectation that Plaintiff's side effects from medication would be severe, the ALJ highlighted previous medical reports that showed no complaints of side effects. *Id.*

Because of the conflicting evidence about Plaintiff's condition at that time, the ALJ gave little weight to the CE's evaluation and instead interpreted Plaintiff's reports to the CE as exaggerations. Therefore, there was substantial evidence to support the ALJ's rejection of the CE's opinion.

B.    Severity of Impairments.

Plaintiff argues that the ALJ's finding that she suffered no severe impairments is not supported by the evidence of record. (Doc. 7 at 8). A claimant must have a severe impairment to be found disabled under the Social Security Act. *See* 20 C.F.R. § 416.920(c). A severe impairment is one that significantly limits an individual's ability to perform basic work activities. *Id*. An impairment is not severe if it is a slight abnormality or a combination of abnormalities that would be expected to have no more than a minimal effect on the individual's physical or mental abilities to perform basic work activities. *See* 20 C.F.R § 416.921(a); *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986); *Brady v. Heckler*, 724 F.2d 914, 922 (11th Cir. 1984). Basic work activities are the "abilities and aptitudes necessary to do most jobs" and include the following:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b).

Although a claimant bears the burden to prove the severity of her impairment(s), the burden is mild and not insuperable. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987); *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (noting that the "claimant need only show that her impairment is not so slight and its effect not so minimal"); *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). However, a claimant has the responsibility to provide medical evidence showing the existence and severity of an impairment(s) during the alleged period of disability. *See* 20 C.F.R. § 416.912(c). Notably, severity must be measured in terms of its effect upon a claimant's ability to work. *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1988). This Court must ask whether a reasonable mind could review the evidence of impairment and still conclude that the "condition has only a minimal effect on her ability to perform the most general and rudimentary functions of a work activity as those functions are set out in the regulation . . . ." *Flynn v. Heckler*, 768 F.2d 1273, 1275 (11th Cir. 1985).

In support of her argument as to pain and limitation, Plaintiff relies on the medical records from both Cooper Green Mercy Hospital and the CE, Dr. Zaremba. (Doc. 7 at 9-12.) Since this Court has already determined that

the ALJ's rejection of the CE's evaluation was supported by substantial evidence, it need only address whether there was substantial evidence to show that Plaintiff's limitations from sources other than the CE produced anything more than a minimal effect on basic work activities.

The ALJ separately addressed each of Plaintiff's alleged impairments, considering both treating medical sources and results from diagnostic studies. (Tr. at 17-19.) Regarding Plaintiff's testimony of headache pain, the ALJ observed that it was often associated with other symptoms such as colds, flu-like symptoms, and hypertension. *Id.* at 18. The ALJ highlighted that in 2003 a treating physician noted that Plaintiff's headaches appeared to be due to other causes and that her complaints of headache pain during two emergency room visits that year were accompanied by complaints of fever, body aches, upset stomach, and chest pain.[1] *Id.* Further, the ALJ explained that while Plaintiff was diagnosed with ordinary vascular/tension

---

[1]Plaintiff contends that the ALJ's analysis of headache pain being associated with other symptoms is improper. (Doc. 7 at 7.) Instead, she argues that her headache pain alone establishes a severe impairment. *Id.* However, this argument is without merit. As discussed below, the ALJ specifically analyzed Plaintiff's complaints of headache pain and provided specific treatment and diagnostic evidence to support his findings. (Tr. at 18.) The link between Plaintiff's headache pain and other symptoms was discussed only in the larger context of the ALJ's overall analysis of headache pain.

headaches in 2004, two CT head studies from 2005 were normal and revealed no abnormalities.  *Id.*  Finally, the ALJ pointed out that when Plaintiff requested medication in late 2005, "she acknowledged that her uncontrolled hypertension was causing headaches secondary to medication non-compliance."  *Id.*

The ALJ also addressed Plaintiff's testimony that she had been diagnosed with a mass in her chest that was treated with steroids.  *Id.* at 17-18.  The ALJ detailed many hospital visits in which diagnostic testing repeatedly revealed no abnormalities, including specific testing in mid-2005 that did not reveal a mass in her chest.  *Id.*  Although the ALJ noted that Plaintiff complained of chest pain during several visits and was actually diagnosed with pleuritic chest pain in 2003 and musculoskeletal chest wall pain in 2004, he also pointed out that there were two approximately one-year periods during which either no complaints of chest pain were noted or no chest pain evaluations were performed.  *Id.*

The ALJ also specifically analyzed Plaintiff's history of hypertension and concluded that her blood pressure was poorly controlled because of medication non-compliance.  *Id.* at 18.  The ALJ noted that Plaintiff's

elevated blood pressure during two emergency room visits in 2003 occurred

before she had been prescribed medication. *Id.* The ALJ also remarked that

Plaintiff did not return in follow up for hypertension until eight months after

medication had been prescribed. *Id.* at 18-19. Further, the ALJ pointed out

that hospital records show that in late 2005 Plaintiff reported headaches

because she had been out of medication for one month. *Id.* at 19. Finally,

although the ALJ noted two instances of elevated blood pressure after

Plaintiff was prescribed medication, the ALJ presented them as contextual

evidence of further non-compliance rather than an underlying impairment.

*Id.* at 18.

Finally, the ALJ addressed Plaintiff's testimony of neck to low back

pain, periodic leg numbness, and resulting falls. *Id.* at 19. The ALJ wrote

that in 2005 Plaintiff complained of pain and numbness in her wrist and hand

caused by a cyst but that it had since been aspirated. *Id.* The ALJ also

pointed out that Plaintiff's rheumatoid profile test was negative in 2003.

*Id.* While the ALJ noted that Plaintiff complained of right-hand shoulder

pain once in 2003 and left-hand leg pain once in 2004, he emphasized that

there was no objective evidence that Plaintiff ever complained of or was treated for back, neck, or leg pain other than those occasions.  *Id.*

The ALJ found that the evidence was insufficient to establish an impairment or impairments that produced more than a minimal effect on Plaintiff's ability to perform basic work activities.   This finding was supported by substantial evidence.

IV.    Conclusion.

Upon review of the administrative record, and considering all of Ms. Ricks's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this 17<u>th</u> day of <u>June 2008</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**